IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

vs.                                        Case Nos.:    4:13cr41/RH/GRJ
                                                         4:15cv14/RH/GRJ

PEDRO ANTWAN BISHOP,

_____

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the court upon Petitioner Pedro Antwan Bishop's "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody."   (ECF No. 315.)   The Government filed a response (ECF No. 332) and Bishop filed a reply and sworn declaration in support.   (ECF Nos. 338, 339.)   The Court held an evidentiary hearing on February 8, 2018, and after reviewing the record and hearing the testimony presented at the hearing, hereby recommends that Ground One of Bishop's motion be granted and he be afforded an out of time appeal.

### BACKGROUND

Pedro Antwan Bishop pleaded guilty on July 25, 2013 to conspiracy to distribute five kilograms or more of cocaine and 280 grams or more of cocaine base ("Count One") and distribution of twenty-eight grams or more

of cocaine base ("Count Two").   (ECF Nos. 128-131.)   The written plea agreement provided that due to a prior felony drug conviction, Bishop faced a minimum of twenty years' imprisonment up to a maximum of life on Count One, and a minimum of ten years' imprisonment on Count Two.   (ECF No. 130 at 1-2.)   The plea agreement was signed by both Bishop and his retained attorney David W. Collins, Esq.

Bishop's Presentence Investigation Report ("PSR") reflected a total offense level of 39 and a criminal history category of I.   (ECF No. 192.) This was based on the probation officer's determination that the offense conduct involved 39.5 kilograms of powder cocaine and two kilograms of crack cocaine.   (ECF No. 192, PSR ¶ 26.)   The applicable guidelines range of 262 to 327 months was within the statutory range.   (ECF No. 192, PSR ¶¶ 122, 123.)

Sentencing occurred on January 14, 2014.   At sentencing, the court found that Bishop should be held accountable for only thirteen kilograms of powder cocaine.   (ECF No. 303 at 65, 68, 71.) The applicable total offense level was reduced to 35.   The revised guidelines range of 168 to 210 months was trumped by the statutory mandatory minimum, thus yielding a

guidelines range of 240 months.    Counsel noted at sentencing that his client was the lone co-defendant who had not received the benefit of a § 5K1 motion, and that they were hoping that Bishop still might be considered for a Rule 35 motion after sentencing.    (ECF No. 303 at 83.)    The court sentenced Bishop to the mandatory minimum term of imprisonment.    (ECF Nos. 247, 248; ECF No. 303 at 93-94.)

Bishop did not appeal, and counsel's failure to appeal is one of the three grounds raised in the § 2255 motion currently at issue.    Bishop also claims that counsel was constitutionally ineffective because he failed to convey a plea offer before the Government filed its notice of enhancement. He raised a third claim, that counsel failed to object to his enhanced sentence, but withdrew this claim in his reply.    (ECF No. 338 at 3-4.)    The Government opposes the motion.

## ANALYSIS

### General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.    A prisoner is entitled to relief under section 2255 if the

court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.   *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).   To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).   Because the court finds merit in Bishop's claim that his attorney was constitutionally ineffective because he either failed to file, or failed to consult with Bishop about, an appeal, this is the only claim that will be discussed herein.   *See McIver v.*

Case Nos.: 4:13cr41/RH/GRJ; 4:15cv14/RH/GRJ

*United States*, 307 F.3d 1327, 1331 n.2 (11th Cir. 2002) (collateral claims

should not be entertained while a direct appeal (here, a belated appeal) is

pending).

### *Ground One—Failure to Appeal*

Bishop's first claim for relief is that counsel was constitutionally

ineffective because he did not file an appeal as instructed.

### *Applicable Law Regarding Counsel's Duties with Respect to Appeal*

If a defendant specifically instructs his attorney to file a notice of

appeal, a lawyer who disregards this instruction acts in a manner that is

professionally unreasonable.   *Roe v. Flores-Ortega*, 528 U.S. 470, 477

(2000) (citing *Rodriguez v. United States*, 395 U.S. 327 (1969); *Peguero v.

United States*, 526 U.S. 23, 28 (1999)).   Because a defendant whose

lawyer fails to file an appeal upon request has been denied an entire

judicial proceeding, prejudice is presumed and the defendant is entitled to a

belated appeal.   *Id.*; *Gomez-Diaz v. United States*, 433 F.3d 788, 792

(11th Cir. 2005).

Case Nos.: 4:13cr41/RH/GRJ; 4:15cv14/RH/GRJ

In cases where a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, the question whether counsel has performed deficiently by not filing a notice of appeal is analyzed as follows:

> [T]he question . . . is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal.   We employ the term "consult" to convey a specific meaning — advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.   If counsel has consulted with the defendant, the question of deficient performance is easily answered; Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.   *See supra* 1034–1035.   If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Flores-Ortega,* 528 U.S. at 478; *see also Thompson v. United States*, 504 F.3d 1203, 1207 (11th Cir. 2007).   The *Flores-Ortega* Court rejected a bright-line rule that counsel must always consult with a defendant regarding an appeal:

> We instead hold that counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known . . . .

> Although not determinative, a highly relevant factor in this
> inquiry will be whether the conviction follows a trial or a guilty
> plea, both because a guilty plea reduces the scope of
> potentially appealable issues and because such a plea may
> indicate that the defendant seeks an end to judicial
> proceedings.

*Id.,* 528 U.S. at 480; *see also Devine v. United States*, 520 F.3d 1286 (11th

Cir. 2008) (finding counsel had no affirmative duty to consult with defendant

about an appeal where defendant was sentenced at the bottom of the

Sentencing Guidelines range after pleading guilty and waiving right to

appeal); *Thompson,* 504 F.3d at 1208 (11th Cir. 2007) (defendant

dissatisfied with perceived disparate sentence met burden of showing he

would have wanted to appeal); *Otero v. United States*, 499 F.3d 1267 (11th

Cir. 2007) (defendant who received sentence at low end of predicted

guidelines range and had not expressed desire to appeal failed to show

prejudice).

In cases where a defendant has not specifically instructed his counsel

to file a notice of appeal, a *per se* prejudice rule does not apply, rather, a

defendant must demonstrate a reasonable probability exists that, but for

counsel's deficient performance, he would have timely appealed.   *Flores-*

*Ortega*, 528 U.S. at 484, 486; *Thompson,* 504 F.3d at 1207.   "Evidence

that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Flores-Ortega*, 528 U.S. at 485.   However, "[b]ecause a direct appeal of a federal conviction is a matter of right, *see Rodriquez v. United States*, 395 U.S. 327, 329–30 (1969), we determine whether a defendant has shown that there is a reasonable probability that he would have appealed without regard to the putative merits of such an appeal."   *Thompson*, 504 F.3d at 1208 (citing *Flores-Ortega*, 528 U.S. at 485–86; *Gomez-Diaz*, 433 F.3d at 793).

In *Thompson*, in reviewing a claim that counsel had failed to consult with the defendant about his appeal, the district court found "[c]onsulting with [Thompson] for less than five minutes about his right to appeal does not equate to a failure to consult."   504 F.3d at 1207.   On appeal, the Eleventh Circuit stated that the question of what equates to adequate consultation, however, is not one of duration, but of content. *Id.*   It found that the content of the exchange in that case did not constitute adequate consultation because no information was provided to the defendant from which he could have intelligently and knowingly either asserted or waived

his right to an appeal, and the record was clear that no reasonable effort was made to discover defendant's informed wishes regarding an appeal. *Id.* Under these circumstances, the court found that any waiver by the defendant of his right to appeal was not knowing and voluntary. *Thompson,* 504 F.3d at 1207.

In *Otero v. United States*, 499 F.3d 1267, 1270–71 (11th Cir. 2007), the court found that counsel had not consulted with his client, when all discussions took place prior to sentencing.   However, it found that no rational defendant in Otero's position would have sought to appeal in light of the broad appeal waiver, and because Otero did not communicate to his lawyer a desire to appeal, it concluded that counsel was not under a constitutional obligation to consult with his client about an appeal.

## The Written Record

Bishop claims in his motion that on January 15 (sic), 2014, he told his attorney that he wanted to appeal.   (ECF No. 315 at 3.)   After the fourteen-day deadline for filing an appeal had passed, he received a letter from Collins indicating that counsel no longer represented him, and that he had no right to appeal.   (ECF No. 315 at 3.)

Case Nos.: 4:13cr41/RH/GRJ; 4:15cv14/RH/GRJ

The sentencing transcript reveals that Bishop and two of his co-defendants were sentenced simultaneously.   After imposing sentence, the district judge advised the defendants collectively that they had the right to appeal, and that any appeal needed to be filed within the next fourteen days.   (ECF No. 303 at 96.)   The district judge advised Bishop specifically that he could continue with Mr. Collins as his retained counsel, or if he could not afford a lawyer that one would be appointed for him.   (ECF No. 303 at 96-97.)   The district judge then stated to the three defendants and their attorneys:

> For each of you, your lawyer can file a notice of appeal. The clerk of court also would file a notice at your request.   Just make sure that, if you wish to appeal, a notice of appeal gets filed in the next 14 days.
> You should talk with your lawyer just as soon as you can to make sure your lawyer has a clear understanding of whether you do or do not wish to appeal in the case.
> And then the three [lawyers] have all heard my discussion before.   If you're going to handle the appeal, just file the notice and go forward.   If your client decides not to appeal, please write your client a letter to make sure that there is no misunderstanding and to bring home the importance of that decision.
> Mr. Collins, in your case, if Mr. Bishop decides to appeal and you're not going to handle the appeal, please stay with him at least long enough to make sure he gets to a new lawyer and that a notice gets filed on time.

(ECF No. 303 at 97).

Case Nos.: 4:13cr41/RH/GRJ; 4:15cv14/RH/GRJ

Bishop states in his motion, in a separate sworn declaration and in his testimony at the evidentiary hearing that he asked his attorney to file an appeal in his behalf.   (ECF No. 315 at 3; ECF No. 339 at 1.)   Bishop explains that he was under the impression that it was counsel who was supposed to file the notice of appeal on his behalf.   He further testified that he personally did not know how to file an appeal as he did not know what documents needed to be prepared, what information to include in them, or where to mail them.   (ECF No. 339 at 1.)

With its response, the Government submitted a brief affidavit from Bishop's former attorney, David W. Collins, who did not directly dispute this assertion.   Collins states that he expressly informed Petitioner Bishop "as to how to file an appeal and the deadline for doing such."   (ECF No. 332-1 at 1.)   Counsel also recalls that he asked his client to consider the effect that filing an appeal might have on a possible Rule 35 motion.   (*Id.*)   The Government has also submitted a copy of a letter from counsel to his client dated January 15, 2014, in which Collins advised Bishop that he had until January 28, 2014 to file a notice of appeal, and that Bishop could do such by notifying the Clerk.   (ECF No. 332-2 at 1.)   In the letter, counsel stated

Case Nos.: 4:13cr41/RH/GRJ; 4:15cv14/RH/GRJ

that Bishop did not have any viable issue to appeal, but that the decision whether to appeal was Bishop's decision. (*Id.*)   Collins closed his letter by stating "Should you have any questions, please write my office."   (*Id.*)

Bishop continued to maintain in his reply and supporting affidavit that he requested counsel to file a notice of appeal.

## The Evidentiary Hearing

To resolve the factual dispute, the Court conducted an evidentiary hearing on February 8, 2018.   David Collins and Pedro Bishop were the only two witnesses.

The Government first called attorney Collins.   Collins, who had been retained to represent Bishop, testified that before the change of plea he and his client met with the Government for a debriefing in the hope that Bishop could benefit from a substantial assistance motion.   Collins recalled that the Government's impression of this meeting was that Bishop was not completely candid. Collins had the impression that the Government would not file a 5K1 motion.   Collins stated that after that meeting, Bishop reluctantly agreed to enter a plea of guilty.

Counsel recalled the January 14, 2014 sentencing and Judge Hinkle outlining the parameters for an appeal.   Collins said that after sentence was imposed, he did not believe Bishop was satisfied with the sentence he received.   According to Collins, he and Bishop had words in the courtroom where Bishop expressed his dissatisfaction.   Collins described the general tenor of the conversation as conveying that his services were no longer needed, although he did not recall the precise words that were used.

Counsel could not specifically recall whether he explained the advantages and disadvantages of filing an appeal.   He stated that there was some communication regarding the possibility of Bishop getting a Rule 35 motion if he continued to cooperate.   He described Bishop's pre-trial options as limited, noting that this was a multi-defendant case and that if Bishop had gone to trial, the other defendants would be able to benefit from 5K1 motions, and Bishop would not.   Collins testified that he could not recall his exact words to Bishop, but his advice would have been not to file an appeal and to try for a Rule 35, and that filing an appeal could have hampered his ability to get a Rule 35.   Counsel stated that he did not remember whether he told Bishop that an appeal had any merit, but

referred to his letter dated January 15, 2014 in which he stated that he did not believe there were any viable issues to appeal.

Collins said that generally the post-sentencing letters the court wants counsel to write are applicable to clients who do not want to file an appeal. He described his January 15, 2015 letter as being "the reverse."   Collins said that he looked at the sentencing transcript the night before the evidentiary hearing for the first time. Collins testified that he did not recall Judge Hinkle's words, specifically directed at him, to stay with his client until the matter of the appeal was resolved.   Collins further testified that that he could not recall why he would have written the letter to Bishop rather than filing the appeal himself, as Judge Hinkle requested.

The Government introduced into evidence an email from Bishop to Collins dated February 1, 2014, with a "send" date of February 3, 2014. (Government Exh. 2; ECF No. 408-1.)   These dates were outside the fourteen-day time period to file an appeal.

Bishop's email, sent from the Federal Detention Center in Tallahassee, contained a request for all papers and documents pertaining to Bishop's case, and asked Collins to send the documents to Bishop at the

Federal Detention Center in Tallahassee on or before February 5, 2014.

In the second paragraph, Bishop states "I have retained the services of Mr.

Chris Lyons, Esq. . . . for the purpose of the legal counsel for the Sentence

Appeal process" and he asks that counsel send Mr. Lyons all documents

pertaining to his case.

> The third paragraph of the email read as follows:
>
> I have tried to contact you several times at your office by
> telephone but have not been successful to date.   On January
> the 27th I contacted your office to ask that you file something
> on my behalf with the Clerk of Courts but was told by your
> secretary that I would have to file through the Clerk of Courts
> office.   My Counselor, Mr. David Arnold tried to reach you by
> telephone but was told you were not available as well.

(ECF No. 408-1.)

Bishop closed the letter by thanking counsel and giving consent for

counsel to share information with his cousin.

Collins testified that he did not specifically recall receiving the email

communication, but he believes that he must have.   He agreed that on

January 27, the date that Bishop allegedly contacted his office, Bishop

would have had time to timely file a notice of appeal by contacting the clerk

of court.

Case Nos.: 4:13cr41/RH/GRJ; 4:15cv14/RH/GRJ

The Government questioned Collins at length about Judge Hinkle's advice after sentencing. Government Exhibit 4, pps 96-97 of the sentencing transcript.   (ECF NO. 303 at 96-97.)   Collins acknowledged that Judge Hinkle told him to stay with Bishop long enough to make sure he had a new lawyer and that the notice of appeal was filed on time.   (ECF No. 303 at 97.)

Collins reiterated that after sentencing, he and Bishop did not have much of a conversation, and he did not recall the discussion with Bishop other than generally recognizing that Bishop was both dissatisfied with counsel's services and generally upset about the whole situation.   Counsel said that he had no doubt whatsoever that Bishop did not want him to be his attorney, although he could not recall the exact words.

On redirect the Government again questioned Collins about the district judge's instructions at sentencing.   Collins reiterated that he had not seen the transcript until the night before the evidentiary hearing. Collins said he did not understand why he did not file a notice of appeal if Bishop had wanted Collins to do so because filing the notice of appeal is not that difficult.   Although Collins speculated that he might not have filed a notice

of appeal because Bishop's email advised Bishop was planning to hire another attorney, Collins conceded that if the date on the email was correct, he would not have known that Bishop had obtained a new attorney until after the period for filing the notice of appeal had elapsed.

Collins testified that he follows what Judge Hinkle directs whether it is a request or an order.   He explained that because he believed Bishop did not want his services, he did what he had to—he told Bishop he had fourteen days to file an appeal.   Counsel conceded that looking back he did not do what the Court asked of him.

Nonetheless, Collins testified that if he Bishop had asked him to file a notice of appeal, he would absolutely have done that the next day.   Collins reiterated that he did not think there were any appellate issues, and he did not want Bishop to ruin his last chance at a Rule 35 by filing a notice of appeal.

Collins explained that many of his old client records had been destroyed, including Bishop's as a result of rainwater leaking into his storage shed.   He said that he discovered the decay in the file when the

Case 4:13-cr-00041-RH-GRJ    Document 410    Filed 02/12/18    Page 18 of 27

Page **18** of **27**

Government contacted him about the motion, although he was able to produce a signed copy of his January 15, 2014 letter to his client.

The Court posed several questions. In response to the Court's question, Collins stated that he had never had any communication with Mr. Lyons, the attorney referenced in Bishop's email. Collins said that he thought this was odd because the February 5 deadline mentioned in the email was outside the fourteen-day deadline, but that it was within what would have been the time frame in state court. Collins also stated that he did not recall any other contact with Bishop after the February 2014 email. The Government did not call any other witnesses.

Pedro Bishop testified briefly in support of his position. Bishop admitted that he had not been happy about the length of his sentence. He recalled having a conversation with counsel about an appeal after sentencing, and turning to counsel and telling Collins to file the notice of appeal. Bishop said that he believed Collins was going to file the appeal, but he never had any communication after that. He said Collins never came to the prison to consult with him. And he did not recall receiving the

Case Nos.: 4:13cr41/RH/GRJ; 4:15cv14/RH/GRJ

January 15, 2014 letter from his lawyer.[1]   Bishop testified that he tried several times to contact Collins by phone but was unsuccessful.

On cross-examination, the Government asked Bishop what Collins said after Bishop told Collins he wanted to appeal.   Bishop said Collins told him an appeal didn't have any merit, but he (Bishop) still wanted to appeal.

The Government questioned Bishop about whether he had understood that the Court told him that he had 14 days to appeal and he could have the clerk do it or have counsel do it.   Bishop said that his understanding was that "Mr. Collins being my attorney, he would do it."

Bishop was asked about his February 1, 2014, email to counsel. Concerning the reference in the email about one of Collins' staff members advising Bishop that he would have to file something with the court, Bishop said the staff member told him that Collins was off his case and the only way to file the appeal was for Bishop to do it himself. Bishop admitted that he did not make a phone call to the clerk because he still believed Mr. Collins was his attorney and Collins should file the notice of appeal.

---

[1] Neither attorney asked Bishop about the letter referenced in his § 2255 motion, which he claimed to have received 22 days after sentencing and which told him that Collins was no longer his attorney and he had no right to appeal.

Bishop said that he did not realize that he could have made a phone call to the clerk requesting the clerk to file the notice of appeal.   According to Bishop, he was waiting for Collins to come and see him but it never happened.

On redirect, Bishop testified that he was never told he could simply call the clerk, he was not told which clerk to call, and he was not provided with a phone number for the clerk.

The court inquired of Bishop about his relationship with attorney Lyons.   Bishop clarified that he never actually retained him, but a family member had contacted Lyons to see if he would represent Bishop. Although Lyons wanted to review the case documents, Lyons never contacted Bishop via phone, email or letter.

Bishop testified that he first realized on January 27th that he was nearly out of time for filing the appeal.   He said he had tried to contact Collins several times, without success.   He did not know whether the appeal had been filed, but he was concerned because he had not heard from counsel.   He again said he had no recollection or record that he received the January 15, 2014 letter from counsel.

The Government then followed up on the court's questioning by asking why Bishop requested his prison case manager to attempt to communicate with Collins.   Bishop explained that he asked his prison case manager to contact Collins because Collins had not been answering calls from the main prison line.   The Government asked Bishop whether he had asked his case manager to call the clerk's office for him, or whether he had any reason to believe his case manager would not have done so.   Bishop reiterated that no one had ever told him that a phone call was all it took to request the filing of a notice of appeal in his behalf.

## Analysis

Bishop's original claim was that counsel failed to file an appeal upon request.   Resolution of this issue requires a credibility determination.   The Court finds that the testimony of both witnesses appeared credible. Neither witness appeared intentionally evasive or misleading in his testimony.   Collins seemed candid about what he did or did not recall, and explained when he recalled impressions rather than exact words.   He did not recall the district judge's instructions to him and appeared genuinely regretful that he did not follow these instructions to the letter.

Case Nos.: 4:13cr41/RH/GRJ; 4:15cv14/RH/GRJ

Similarly, Bishop also did not appear to be fabricating or embellishing his testimony.    Apparent conflicts in the evidence, for instance Bishop's reference to having "retained" the services of another lawyer (Lyons), appeared to be explainable by linguistic imprecision.    And, although he was the second witness to testify, he did not appear to alter his testimony to address matters presented by counsel.

Collins' letter of January 15, 2014 supports counsel's position that he did not hear Bishop tell him that he wanted to appeal.    Bishop's comment to Collins at sentencing that Bishop wanted Collins to file an appeal may have been made but lost in the ensuing conversation concerning Bishop's dissatisfaction with Collins' performance and Collins's impression from the discussion that Bishop did not want Collins to represent him any longer. In sum, in light of Bishop's dissatisfaction with the situation in general, it is quite possible, if not probable, that Bishop requested that Collins file an appeal immediately after sentencing, but that this request was misunderstood. Even assuming, however, that Bishop after sentencing did not request Collins to file an appeal, Bishop is still entitled to relief because

the record demonstrates that Collins did not consult with Bishop after sentencing and before the deadline to appeal expired.

Independent of whether Bishop directed Collins to file an appeal, Collins January 15, 2104 letter establishes that Collins did not consult and ascertain his client's wishes as constitutionally required by *Roe*.   While Collins' failure to follow Judge Hinkle's instructions to stay with the Defendant until a notice of appeal was filed is not per se constitutionally ineffective performance, Collins was, nonetheless, required under *Roe* to engage in meaningful consultation with Bishop. There was no evidence presented at the evidentiary hearing that Collins specifically discussed with Bishop how he wanted to proceed or that Collins discussed the pros and cons of pursuing an appeal.   Collins confirmed at the hearing that he did not recall doing so.   And, despite Collins' view that there was a lack of merit to an appeal, the presence of a non-frivolous appellate issue is neither necessary nor dispositive under *Roe.*

While Bishop waited until almost the last minute to file his § 2255 motion---despite learning relatively quickly that counsel had not filed a notice of appeal---there was no evidence presented that Bishop filed the §

2255 motion because of his failure to receive a Rule 35 nor was there any evidence that Bishop made further attempts to cooperate after sentencing. In any event, the timing of his motion does not impact the Court's finding that Bishop is entitled to an out of time appeal because, at a minimum, his counsel failed to consult with him after sentencing and before the time to appeal had expired concerning the advantages and disadvantages of filing an appeal.

## <u>Proper Procedures</u>

The proper procedure when an out-of-time appeal is warranted is: (1) the criminal judgment from which the out-of-time appeal is to be permitted should be vacated; (2) the same sentence should then be re-imposed; (3) upon re-imposition of that sentence, the defendant should be advised of all the rights associated with an appeal from any criminal sentence; and (4) the defendant should also be advised that the time for filing a notice of appeal from that re-imposed sentence is fourteen days, as dictated by Federal Rule of Appellate Procedure 4(b)(1)(A)(i). *United States v. Parrish*, 427 F.3d 1345, 1347 (11th Cir. 2005) (quoting *United*

Case Nos.: 4:13cr41/RH/GRJ; 4:15cv14/RH/GRJ

States v. Phillips, 225 F.3d 1198, 1201 (11th Cir. 2000)); *United States v. Palacios*, 516 F. App'x 734 (11th Cir. 2013).

Bishop's remaining claims should be dismissed without prejudice to his right to raise these claims, if appropriate, upon conclusion of his direct appeal. *See McIver*, 307 F.3d at 1331 n.2 ("We think the best approach is to dismiss without . . . the resolution of remaining collateral claims pending the direct appeal. There are significant inefficiencies to any other approach."). "'[A]n order granting a § 2255 petition, and reimposing sentence, will reset to zero the counter of collateral attacks pursued and will not render subsequent collateral proceedings 'second or successive.'" *Id.*, 307 F.3d at 1332 (quoting *Shepeck v. United States*, 150 F.3d 800, 801 (7th Cir. 1998)).

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1.    The "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody" (ECF No. 315) should be **GRANTED** with respect to Ground One of Bishop's motion, and that the remaining claims, Grounds Two and Three, should be **DISMISSED without prejudice.**

Case Nos.: 4:13cr41/RH/GRJ; 4:15cv14/RH/GRJ

2.      Bishop's criminal judgment should be vacated and the same

sentence should be reimposed.

3.      Counsel should be appointed for the purpose of appeal (or, at

minimum, to consult with Bishop with respect to his desire to

appeal).

And it is **ORDERED:**

1. The clerk must send a copy of this report and recommendation to

Pedro Bishop at his address of record and to Donna Duncan, who

appeared on Bishop's behalf at the evidentiary hearing.

2. Ms. Duncan must communicate with Mr. Bishop, and should

continue as counsel of record unless relieved of further duties by

the Court upon appropriate motion.

**IN CHAMBERS** at Gainesville, Florida, this 12th day of February,

2018.

*/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

Case Nos.: 4:13cr41/RH/GRJ; 4:15cv14/RH/GRJ

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case Nos.: 4:13cr41/RH/GRJ; 4:15cv14/RH/GRJ